**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| VONDELL WILBOURN, individually and for others similarly situated, | ) | |
| *Plaintiff,* | ) | |
| -*vs*- | ) | Case No. 23-cv-1782 |
| SHERIFF OF COOK COUNTY and COOK COUNTY, ILLINOIS, | ) | Honorable Manish S. Shah<br>Magistrate Judge Young B. Kim |
| *Defendants.* | ) | |

**<u>DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT</u>**

Defendants, SHERIFF OF COOK COUNTY and COOK COUNTY, ILLINOIS, by their attorney KIMBERLY M. FOXX, State's Attorney of Cook County, through her Special Assistant State's Attorneys, JOHNSON & BELL, LTD., submit the following reply in support of their motion to dismiss Plaintiff's amended complaint:

The "touchstone of the Fourth Amendment is reasonableness." *Ohio v. Robinette*, 519 U.S. 33, 39 (1996) (citation omitted). In this case, Plaintiff was taken back into custody for violating the conditions of electronic monitoring, a program run by the Sheriff's Office. This is reasonable under the Fourth Amendment. As the Seventh Circuit noted, "The bail have their principal on a string, and may pull the string whenever they please, and render him in their discharge." *Williams v. Dart*, 967 F.3d 625, 636 (7th Cir. 2020) (citation omitted). After officers took Plaintiff back into custody, they were required to deliver him "to court after a brief time needed for administrative purposes." *Id.* That is exactly what happened in this case. Plaintiff violated the conditions of electronic monitoring, and officers took Plaintiff back into custody and delivered him to the court on the next available court day.

Plaintiff argues that "the crux of this case is whether the Sheriff has the right to terminate electronic monitoring and revoke plaintiff's bond without court approval." (Pl.'s Resp., at 5, ECF No. 22.) Based on this formulation of Plaintiff's case, there can be no question that the case should be dismissed. The Sheriff's Office did not revoke Plaintiff's bond or any condition of that bond, including electronic monitoring. Rather, Sheriff's officers took Plaintiff back into custody for violating the conditions of electronic monitoring and delivered him to the court. It was the state court judge who then revoked Plaintiff's bond, terminated the condition of electronic monitoring, and ordered that Plaintiff be held without bail. Plaintiff has not plausibly alleged any constitutional violation, and therefore, his amended complaint must be dismissed.

## I. Plaintiff Did Not Respond to the Deficiencies in His Amended Complaint that Defendants Raised in Their Motion to Dismiss, and Therefore, Plaintiff Has Waived Those Arguments and His Amended Complaint Must Be Dismissed.

As Defendants argued in their motion to dismiss, Plaintiff's Fourteenth Amendment claim must be dismissed because it is redundant with his Fourth Amendment claim. (Mot. to Dismiss, at 13–14, ECF No. 20.) Defendants also argued that Plaintiff's Fourth Amendment claim must be dismissed because Plaintiff failed to plead lack of probable cause. (*Id.* at 8–9.) Plaintiff, however, did not address either of Defendants' arguments in his response brief. As such, Plaintiff has waived these arguments, and his Fourteenth and Fourth Amendment claims must be dismissed for this reason alone.

A plaintiff "waives an argument by failing to make it before the district court." *Braun v. Village of Palatine*, 56 F.4th 542, 553 (7th Cir. 2022) (quoting *Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011)). "This rule applies when a party fails to develop arguments related to a discrete issue and also when he effectively abandons the issue by not responding to alleged deficiencies in a motion to dismiss." *Braun v. Village of Palatine*, 56 F.4th 542, 553 (7th Cir. 2022) (internal quotation marks omitted) (quoting *Alioto*, 651 F.3d at 721).

Accordingly, "even a complaint that passes muster under the liberal notice pleading requirements of Federal Rule of Civil Procedure 8(a)(2) can be subject to dismissal if a plaintiff does not provide argument in support of the legal adequacy of the complaint." *Lee v. Ne. Ill. Reg'l Commuter R.R. Corp.*, 912 F.3d 1049, 1053–54 (7th Cir. 2019). As the Seventh Circuit has stated, "Our system of justice is adversarial, and our judges are busy people. If they are given plausible reasons for dismissing a complaint, they are not going to do the plaintiff's research and try to discover whether there might be something to say against the defendants' reasoning." *Alioto*, 651 F.3d at 721 (quoting *Kirksey v. R.J. Reynolds Tobacco Co.*, 168 F.3d 1039, 1041 (7th Cir. 1999) (likening a dismissal of a "nonresponsive response brief" to default judgment)).

In *Williams v. Dart*, 967 F.3d 625, 632–33 (7th Cir. 2020), the Seventh Circuit reiterated that the Fourth Amendment applies to *any* wrongful pretrial custody. A plaintiff's Fourteenth Amendment procedural due process claim is redundant and should be dismissed when it is based on the same allegations as a Fourth Amendment claim for an arrest and detention in violation of his liberty. *See Terry v. Talmontas*, No. 11 CV 6083, 2013 U.S. Dist. LEXIS 28063, at *27–28 (N.D. Ill. Feb. 26, 2013). Plaintiff did not address this argument in his response brief, and therefore, he waived the argument, and his Fourteenth Amendment claim must be dismissed.

In addition, a plaintiff "bears the initial burden of alleging facts sufficient to show that [d]efendants lacked probable cause." *Roldan v. Town of Cicero*, No. 17-cv-3707, 2018 U.S. Dist. LEXIS 49122, at *14 (N.D. Ill. Mar. 26, 2018). Even where a plaintiff alleges "lack of probable cause" in a conclusory manner, such an allegation is insufficient to withstand a motion to dismiss. *See id.* at 13–14 (citing cases). Plaintiff failed to include *any* allegations of probable cause, and thus, Plaintiff falls short of even conclusory allegations that have been found to be insufficient. *See id.* Although Plaintiff argues in his response brief that the officers did not have probable cause to arrest him, he does not address Defendants' argument that he was required to include these

allegations *in his amended complaint*. Plaintiff has thus waived this point, conceding that he was required to include these allegations in his amended complaint. Because he did not, his amended complaint fails to state a Fourth Amendment claim and must be dismissed.

## II. Defendants Did Not "Reframe" Plaintiff's Amended Complaint but Rather, Focused on Only One Part of Plaintiff's *Monell* Claim.

Plaintiff argues that Defendants "seek to reframe this case from a challenge to explicit policies of the Cook County Sheriff into one against the non-party Deputy Sheriffs who applied those policies to plaintiff." (Pl.'s Resp., at 1.) This mischaracterizes Defendants' motion to dismiss. Plaintiff's challenge to "explicit policies of the Cook County Sheriff" cannot be separated from the application of those alleged policies to Plaintiff. A policy must be the moving force behind a constitutional violation before the Sheriff's Office can be held liable for that policy. Defendants' motion to dismiss simply focuses on the fact that Plaintiff's amended complaint does not plausibly allege an underlying constitutional violation, whether pursuant to the Fourteenth or Fourth Amendment. As such, the Sheriff's Office alleged policies are irrelevant. With no underlying constitutional violation, Defendants cannot be held liable regardless of the existence of any policy.

In *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), the Supreme Court "interpreted § 1983 and addressed the issue of *who can be sued* under the statute." *First Midwest Bank v. City of Chi.*, 988 F.3d 978, 990 (7th Cir. 2021) (emphasis added). "*Monell* did *not* address the substance of any right under the federal Constitution or laws. It has nothing to say on that subject. It's a statutory-interpretation decision." *Id.* (emphasis in original).

Accordingly, the Seventh Circuit will not "delve into the question of municipal liability until [it is] satisfied that a constitutional violation has been alleged and properly supported." *King v. Hendricks Cty. Comm'rs*, 954 F.3d 981, 987 (7th Cir. 2020) (citing *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) ("If a person has suffered no constitutional injury at the hands of the

individual police officer, the fact that the departmental regulations might have *authorized* the use of constitutionally excessive force is quite beside the point." (emphasis in original))). "[A] government entity cannot passively commit a Fourth Amendment violation." *Id.* "For liability to attach, there must be an unreasonable search or seizure . . . ." *Id.*

Plaintiff has not plausibly alleged a constitutional injury, whether under the Fourteenth or Fourth Amendment, and therefore Plaintiff fails to state a claim. Defendants move to dismiss Plaintiff's amended complaint on this point. Defendants did not "reframe" this case as a challenge "against the non-party Deputy Sheriffs who applied those policies to plaintiff." (Pl.'s Resp., at 1.) Rather, Defendants simply point out that without a plausibly alleged constitutional violation, the Court does not even need to consider allegations about policies. *See First Midwest Bank*, 988 F.3d at 987 ("[T]he plaintiff must initially prove that he was deprived of a federal right. That's the first step in every § 1983 claim, including a claim against a municipality under *Monell*. A *Monell* plaintiff must establish that he suffered a deprivation of a federal right *before* municipal fault, deliberate indifference, and causation come into play.").

## III. Plaintiff Lacks Standing Because He Received Credit to His Sentence for the Time Spent in Custody.

In *Ewell v. Toney*, 853 F.3d 911, 917 (7th Cir. 2017), the Seventh Circuit held that "a section 1983 plaintiff may not receive damages for time spent in custody, if that time was credited to a valid and lawful sentence." In this case, Plaintiff spent 1,371 days in custody, and all that time was credited to a valid and lawful sentence. The state court ordered, "The Court finds that the defendant is entitled to receive credit for time actually served in custody for a *total credit* of . . . 1,371 days." (Mot. to Dismiss, Ex. D, Order of Commitment and Sentence, ECF No. 20-4, emphasis added.) The state court did *not* credit only 365 days to Plaintiff's sentence as Plaintiff argues in his response brief. (Pl.'s Resp., at 8.) The state court credited the entire 1,371 days to

Plaintiff's valid and lawful sentence. As such, *Ewell* is directly on point, and Plaintiff lacks standing to bring a claim for unlawful detention.

## IV. Plaintiff's Amended Complaint Does Not Plausibly Allege a Constitutional Violation Under the Fourteenth or Fourth Amendment.

Plaintiff argues that he is bringing three separate claims in this case. Plaintiff's first claim is brought under the Fourteenth Amendment. Plaintiff argues that he was entitled to a hearing by a judicial officer to lawfully revoke his release on electronic monitoring. (Pl.'s Resp., at 3.) Plaintiff's second and third claims are brought under the Fourth Amendment. For his second claim, Plaintiff argues that officers entered his dwelling without a warrant to take him back into custody for violating the conditions of electronic monitoring. (*Id.*) For his third claim, Plaintiff argues that he could not be taken back into custody for violating the conditions of electronic monitoring unless he "knowingly violate[d] a condition" of release. (*Id.*)

### A. Plaintiff fails to state a procedural due process claim under the Fourteenth Amendment because he received a hearing before the state court judge, who ordered Plaintiff to be held without bail.

Plaintiff's due process claim under the Fourteenth Amendment is redundant with his Fourth Amendment claim and should be dismissed. Plaintiff did not respond to Defendants' argument in his response brief, so he waived the argument. Even if the Court does not find waiver, Plaintiff's Fourteenth Amendment claim is nevertheless redundant. The basis of Plaintiff's Fourteenth Amendment claim is that he was unlawfully detained at the Jail for violating the conditions of electronic monitoring without an order from a judicial officer. (Am. Compl. ¶¶ 14–15, ECF No. 20.) This is identical to the basis for his "third" claim under the Fourth Amendment, which is the exclusive vehicle for a claim for unlawful detention. *See Lewis v. City of Chicago*, 914 F.3d 472, 478 (7th Cir. 2019) ("It's now clear that a § 1983 claim for unlawful pretrial detention rests exclusively on the Fourth Amendment."); *see also Terry*, 2013 U.S. Dist. LEXIS 28063, at *27–

28 (dismissing the plaintiff's Fourteenth Amendment procedural due process claim because it was redundant with his Fourth Amendment claim).

Even if the Court finds that Plaintiff's Fourteenth Amendment claim is not redundant, Plaintiff's amended complaint nonetheless fails to plausibly allege a procedural due process claim under the Fourteenth Amendment. Plaintiff alleges he received a hearing with the state court judge the next court day after being taken back to the Jail. (Am. Compl. ¶¶ 20–22.) At the hearing, the state court judge "granted an oral motion *to revoke bond* on the representation that a petition for violation of bail bond would be filed." (Ex. A, Mot. to Review Bond ¶ 5, emphasis added.)[1] Plaintiff alleges that the state court judge granted the State leave to file a petition for violation of bail bond and ordered that Plaintiff "be held no bail right now." (Am. Compl. ¶ 22.) Moreover, the transcripts of the hearings Plaintiff attached to his response brief leave no question that it was the *state court judge* who revoked bond, including the condition of electronic monitoring, and *not* the Sheriff's Office. (Pl.'s Resp., Ex. 1, at 3:8–4:11; Ex. 2, at 4:22–5:2.) Plaintiff argues that he should have received a hearing before his condition of bond of electronic monitoring was revoked. Based on Plaintiff's own allegations and the information this Court may take judicial notice of, that is precisely the due process Plaintiff received. (*Id.*; Am. Compl. ¶ 22.)

This Court should not be distracted by Plaintiff's attempt to conflate two distinct stages in the process: (1) taking Plaintiff back into custody for violating the conditions of electronic monitoring; and (2) presenting him before the state court judge who then revoked Plaintiff's electronic monitoring. Plaintiff mischaracterizes the officers' arrest of Plaintiff as "the Sheriff revok[ing] his release on electronic monitoring." (Pl.'s Resp., at 10.) But this is not what occurred.

[1] This Court may take judicial notice of Plaintiff's motion to review bond filed in his criminal case. *See Olson v. Champaign County*, 784 F.3d 1093, 1097 n.1 (7th Cir. 2015) (stating that a court "may take judicial notice of public records not attached to the complaint in ruling on a motion to dismiss under Rule 12(b)(6)").

Plaintiff conflates the two stages so that he can then argue he was not given a hearing before the condition of electronic monitoring was revoked. But the Sheriff's Office did not revoke the condition of electronic monitoring, the state court judge did, and it was done *after* Plaintiff received a hearing. In other words, Plaintiff received a hearing before the condition of electronic monitoring was revoked. (Am. Compl. ¶¶ 20–22.) Plaintiff's own allegations confirm he received due process before the condition of electronic monitoring was revoked.

Plaintiff cites to *Morrissey v. Brewer*, 408 U.S. 471 (1972), for the proposition that "release on parole can only be terminated after a hearing." (Pl.'s Resp., at 9.) True enough but inapplicable to this case because Plaintiff's electronic monitoring *was* terminated "after a hearing." In fact, when read closely, *Morrissey* squarely supports Defendants' position, warranting dismissal of Plaintiff's Fourteenth Amendment claim.

In *Morrissey*, the Supreme Court addressed the process that is due when a State revokes parole. *Id.* at 484–85. The Supreme Court stated, "In analyzing what is due, we see *two important stages* in the typical process of parole revocation." *Id.* at 485. "The first stage occurs when the parolee is arrested and detained, usually at the direction of his parole officer. The second occurs when parole is formally revoked." *Id.* Plaintiff attempts to conflate these two stages by arguing that the condition of electronic monitoring was formally revoked at the time of his arrest. *Morrissey* teaches otherwise.

The Supreme Court stated that "due process would seem to require that some minimal inquiry be conducted . . . as promptly as convenient *after arrest* while information is fresh and sources are available." *Id.* (emphasis added). The purpose of this inquiry is to "determine whether there is probable cause or reasonable ground to believe that the arrested parolee has committed acts that would constitute a violation of parole conditions." *Id.* This is precisely the due process Plaintiff received in this case as alleged in his amended complaint. After his arrest, he was

promptly brought before the state court judge the very next court day for a hearing where the court found probable cause to revoke the condition of electronic monitoring and to hold Plaintiff without bail. (Am. Compl. ¶¶ 19–22.) The Supreme Court also stated, "In our view, due process requires that *after the arrest*, the determination that reasonable ground exists for revocation of parole should be made by someone not directly involved in the case." *Morrissey*, 408 U.S. at 485. Again, this is the due process Plaintiff received as alleged in his amended complaint. After his arrest, he was brought before the state court judge, a neutral judicial officer in the case. (Am. Compl. ¶¶ 19–22.)

As the Seventh Circuit has stated, "the due process clauses do not confer a right to a predeprivation hearing in every case in which a public officer deprives an individual of liberty or property." *Holly v. Woolfolk*, 415 F.3d 678, 680 (7th Cir. 2005). "Due process permits an arrest without a previous hearing because it is dangerous to allow a person who the police have probable cause to believe has committed a crime to roam at large while awaiting a hearing." *Id.* at 681. Here, the probable cause is that Plaintiff violated his court-ordered condition of bond by violating the rules of the Sheriff's Office electronic monitoring program, but the point is the same.

Plaintiff also cites to two cases involving seizures of property, *Fuentes v. Shevin*, 407 U.S. 67 (1972), and *United States v. James Daniel Good Real Prop.*, 510 U.S. 43 (1993). However, as the Supreme Court pointed out in the *James* case, "unlike the seizure [of property] presented by this case, the arrest or detention of a suspect occurs as part of the regular criminal process, where other safeguards ordinarily ensure compliance with due process." *Id.* at 50. "[T]he protections afforded during an arrest and initial detention are 'only the *first* stage of an elaborate system, unique in jurisprudence, designed to safeguard the rights of those accused of criminal conduct.'" *Id.* (quoting *Gerstein v. Pugh*, 420 U.S. 103, 125 n.27 (1975) (emphasis in original)). In *James*, the Supreme Court declined to rely on cases that "concerned not the seizure of property but the arrest or detention of criminal suspects, subjects we have considered to be governed by the

provisions of the Fourth Amendment without reference to other constitutional guarantees." *Id.* Likewise, this Court should not rely on the cases cited by Plaintiff that concern seizure of *property* and not the arrest or detention of criminal suspects governed by the Fourth Amendment. *See id.*

One last point. Plaintiff argues that "Illinois law sets out a procedure for the Sheriff to follow in this instance: To call the alleged infraction to the attention of the prosecutor, who would then follow 725 ILCS 5/110-6(e) and request the trial judge to issue a warrant." (Pl.'s Resp., at 2.) Plaintiff argues that the Sheriff's Office does not follow this procedure and has thus violated the Fourteenth Amendment by failing to follow Illinois law. (*Id.*) Plaintiff's argument is contrary to settled law. "[T]he procedures required by state or local law do not define the constitutional requirements of notice and an opportunity to be heard—a point that [the Seventh Circuit has] made in countless cases for decades." *Rock River Health Care, LLC v. Eagleson*, 14 F.4th 768, 773 (7th Cir. 2021). An alleged violation of "state law is completely immaterial as to the question of whether a violation of the federal constitution has been established." *Thompson v. City of Chicago*, 472 F.3d 444, 454 (7th Cir. 2006). Accordingly, this Court should disregard Plaintiff's argument that Illinois law imposes federal constitutional requirements on Defendants.

### B. Plaintiff fails to state a claim under the Fourth Amendment based on officers entering his dwelling because Plaintiff consented to entry into his dwelling as a condition of the electronic monitoring program.

When a person "consents to an entry by law enforcement, that entry is reasonable and does not infringe on the person's Fourth Amendment rights." *Burritt v. Ditlefsen*, 807 F.3d 239, 249 (7th Cir. 2015) (collecting cases). One condition of participating in the electronic monitoring program is that Plaintiff "shall admit any agent of the supervising authority inside at any time for the purpose of verifying compliance with the conditions of home detention." *People v. Garcia*, 2021 IL App (1st) 190026, ¶ 29 (citing 730 ILCS 5/5-8A-4(A), (B)). In *Garcia*, the court found that the individual "gave prospective consent" based on "such condition of his participation in the

sheriff's EM program." *Id.* ¶ 40. As such, Plaintiff fails to state a Fourth Amendment claim based on allegations that officers entered his dwelling to bring him back to the Jail to appear before a judge for violating the conditions of electronic monitoring because Plaintiff gave prospective consent for the officers to enter his dwelling.

Plaintiff argues that the "record in this case does not include the agreement that plaintiff signed when he was released on electronic monitoring" and that "[n]othing in the provisions of any EM agreement authorized a warrantless entry to plaintiff's dwelling to place him under arrest." (Pl.'s Resp., at 12.) However, Plaintiff signed electronic monitoring agreements that included the same consent required by 730 ILCS 5/5-8A-4. On September 27, 2019, Plaintiff signed an "Electronic Monitoring Participant Contract" that included the following consent: "You agree to admit representatives of this program into your residence twenty-four hours per day to ensure compliance with the conditions of this program." (Ex. B, EM Agreement, at 1.) On January 15, 2021, Plaintiff signed an "Electronic Monitoring (EM) Participant (GPS) Participant Agreement" that included the following consent: "I agree to admit representatives of the Program into my Approved Residence twenty-four hours per day to ensure compliance with the conditions of the Program." (*Id.* at 2–3.)

"[E]ven where a document is not incorporated by reference, a court may consider it on a motion to dismiss if it is integral to the complaint." *Strow v. B&G Foods, Inc.*, No. 21-cv-5104, 2022 U.S. Dist. LEXIS 179463, at *19 n.1 (N.D. Ill. Sep. 30, 2022) (citing *Gociman v. Loyola Univ. of Chicago*, 41 F.4th 873, 881 (7th Cir. 2022)). This is because a plaintiff "may not attempt to 'evad[e] dismissal under Rule 12(b)(6) simply by failing to attach to his complaint a document that proves his claim has no merit.'" *Id.* (quoting *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012) (cleaned up)).

Here, the electronic monitoring agreements Plaintiff signed proves his claim has no merit because Plaintiff provided prospective consent to admit officers into his dwelling twenty-four hours per day "to ensure compliance with the conditions of the Program." (Ex. B, EM Agreement, at 2.) The officers in this case entered Plaintiff's dwelling to ensure compliance with the electronic monitoring program. As Plaintiff alleges, "[t]here were four incidents . . . that were violations of the EM program." (Am. Compl. ¶ 21.) As a result of the violations of the electronic monitoring program, officers took Plaintiff back into custody to appear before the state court judge the very next court day. (*Id.* ¶¶ 19–20.) The purpose of entering Plaintiff's dwelling and taking him back into custody to appear before the state court judge for a hearing was to ensure compliance with the electronic monitoring program. As the prosecutor stated at the hearing, Plaintiff's criminal history "warrants a strict monitoring" of Plaintiff to ensure he is complying with the conditions of electronic monitoring. (Pl.'s Resp., Ex. 2, at 12:13–20.)

For these reasons, Plaintiff fails to state a Fourth Amendment claim based on allegations that officers entered his dwelling because Plaintiff consented to entry into his dwelling as a condition of the electronic monitoring program.

**C. Plaintiff fails to state a claim for unreasonable seizure under the Fourth Amendment because taking Plaintiff back into custody for violating the conditions of electronic monitoring was reasonable.**

Under the Fourth Amendment, it is reasonable for officers to take a person back into custody for violating the conditions of electronic monitoring and to bring him before the court on the next court day. *See Williams*, 967 F.3d at 636 ("[T]he parties that take him to bail are in law his keepers, and may re-seize him to bring him in.").

Moreover, because violating conditions of electronic monitoring is an offense under Illinois law, Plaintiff's arrest was reasonable under the Fourth Amendment for the additional reason that officers had probable cause that Plaintiff committed an offense. *See Aasen v. DRM*,

No. 09 C 50228, 2010 U.S. Dist. LEXIS 68054, at *12 (N.D. Ill. July 8, 2010) (dismissing false arrest claim where the plaintiff's allegations showed that the officer "had probable cause to place plaintiff under arrest").

Plaintiff's amended complaint, however, contains no allegations that the officers lacked probable cause to take him back into custody. Knowing only that a seizure was made without a warrant or court order does not plausibly state a Fourth Amendment claim because seizures may also be effected based on probable cause. Plaintiff did not respond to Defendants' argument in his response brief, so he waived the argument. Even if the Court does not find waiver, Plaintiff nevertheless fails to state a Fourth Amendment claim because his amended complaint does not allege any facts to show the officers lacked probable cause. *See Roldan*, 2018 U.S. Dist. LEXIS 49122, at *14 (stating that a plaintiff "bears the initial burden of alleging facts sufficient to show that [d]efendants lacked probable cause").

Plaintiff concedes the existence of probable cause defeats an unreasonable seizure claim, but he argues that the officers did not have probable cause in his case because his conduct did not demonstrate that he "knowingly violated the rules of the EM program." (Pl.'s Resp., at 14.) However, this is belied by the state court judge's findings at the hearing as reflected in the transcript Plaintiff attached to his response brief.

The violation of the electronic monitoring rules included four deviations from Plaintiff's essential movement. (Pl.'s Resp., Ex. 2, at 7:16–8:11.) The prosecutor noted during the hearing that "If [Plaintiff] has been on EM for all that time, then he *knows precisely* the conditions regarding that electronic monitoring, and there's absolutely no excuse that now [Plaintiff] has violated four separate times." (*Id.* at 7:4–11.) Later in the hearing, Plaintiff's criminal defense attorney (the same attorney as in this civil case) asked rhetorically, "Did [Plaintiff] have notice from the Court that he could not deviate at all[?]" (*Id.* at 13:5–6.) The court responded, "He

absolutely most certainly did. . . . I have *made it perfectly clear each and every time*, and I have given [Plaintiff] the benefit of the doubt every single time." (*Id.* at 13:7–12.) The court noted it would be incorrect to say that the court "has not given notice to [Plaintiff] that he's confined to those areas while there are orders [that say that]." (*Id.* at 13:23–14:2.) The court then went through each order that gave notice to Plaintiff that he was confined to those areas and could not deviate from them. (*Id.* at 14:2–15:10.) As such, the court found that Plaintiff "most certainly did" have knowledge that he could not deviate from the areas he was confined to per the court's orders.

Thus, the transcript Plaintiff attached to his response brief establishes more than probable cause that Plaintiff "knowingly violated the rules of the EM program" when he deviated from his essential movement on four separate occasions. Given that Plaintiff's amended complaint fails to allege a lack of probable cause and given that the transcript Plaintiff attached to his response brief shows the existence of probable cause, Plaintiff's Fourth Amendment unreasonable seizure claim must be dismissed for failure to state a claim.

Plaintiff makes another argument that lacks merit. Plaintiff argues the existence of probable cause that he committed an offense "is inconsistent with how plaintiff was treated after the officers extracted him from his home." (Pl.'s Resp., at 15.) Plaintiff argues he was processed as a person whose bond had been revoked and this is "strong evidence that the Sheriff's policy is not to arrest for violation of an offense, but to revoke bond because of a perceived violation of electronic monitoring rules." (*Id.*)

First, Plaintiff is incorrect that the Sheriff's Office "revoke[d]" Plaintiff's bond. This is inconsistent with Plaintiff's own allegations in his amended complaint. Plaintiff alleges that the state court judge granted the State "leave to file petition for violation of bail bond." (Am. Compl. ¶ 22.) The State had to *petition* the state court to revoke Plaintiff's bond. The Sheriff's Office did not revoke Plaintiff's bond.

Second, as to the substance of Plaintiff's argument, the subjective intentions of the Sheriff's officers who took Plaintiff back into custody are irrelevant to the probable cause analysis. "The probable cause inquiry is an *objective* one; the subjective motivations of the officer do not invalidate a [Fourth Amendment action] otherwise supported by probable cause." *Fitzgerald v. Santoro*, 707 F.3d 725, 732 (7th Cir. 2013) (emphasis in original) (citation omitted). Here, the allegations in Plaintiff's amended complaint and the transcripts attached to his response brief show, objectively, the existence of probable cause that Plaintiff had committed the offense of escape when he violated the conditions of electronic monitoring by deviating from his essential movement on four separate occasions. Whether the Sheriff's officers subjectively intended to arrest Plaintiff for the offense of escape or to take him back into custody for violating the conditions of electronic monitoring is irrelevant to the probable cause analysis.

Lastly, Plaintiff argues the *Williams* case says "nothing" about the claims in this case. (Pl.'s Resp., at 14.) Yet, the *Williams* case addressed Fourth Amendment claims in the context of electronic monitoring. 967 F.3d at 635–36. The Seventh Circuit addressed the timing of bringing a person who is in custody before the court for a judicial determination of pretrial detention. *Id.* The Seventh Circuit recognized that in the context of the Fourth Amendment, a "reasonable administrative delay" is acceptable. *Id.* at 636. After taking individuals into custody, the Sheriff's Office is required "to deliver [them] at once or *to detain them very briefly until it could be done*—to return them to court after a brief time needed for administrative purposes, as we would say today." *Id.* Plaintiff's allegations show that he was detained very briefly until he could be delivered to the court for violating the conditions of electronic monitoring. This is reasonable under the Fourth Amendment, and accordingly, Plaintiff fails to state a claim.

## CONCLUSION

For these reasons, Defendants respectfully request that this Honorable Court dismiss Plaintiff's amended complaint with prejudice and for any other relief this Court deems appropriate.

Respectfully Submitted,

KIMBERLY M. FOXX
State's Attorney of Cook County

Dated: August 21, 2023

/s/ *Samuel D. Branum*
Special Assistant State's Attorney

Monica Burkoth (burkothm@jbltd.com)
Samuel D. Branum (branums@jbltd.com)
JOHNSON & BELL, LTD.
33 W. Monroe, Ste. 2700
Chicago, IL 60603
(312) 372-0770