UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| VONDELL WILBOURN,<br><br>    Plaintiff,<br><br> v.<br><br>SHERIFF OF COOK COUNTY and COOK COUNTY, ILLINOIS,<br><br>    Defendants. | No. 23 CV 1782<br><br>Judge Manish S. Shah |

**MEMORANDUM OPINION AND ORDER**

  Vondell Wilbourn was on pre-trial release subject to the Cook County Sheriff's Electronic Monitoring Program; he had permission to drive his children to school, but the Sheriff's office determined that he had deviated from his original route on four occasions. Officers went to Wilbourn's home and arrested him without a warrant or court order revoking Wilbourn's release. Wilbourn brings section 1983 claims for violations of the due process clause of the Fourteenth Amendment and violations of the Fourth Amendment's prohibition on unreasonable searches and seizures. Defendants seek dismissal based on lack of jurisdiction and failure to state a claim. Because the Fourth Amendment provides the constitutional protections for pre-trial detention, Wilbourn's Fourteenth Amendment claim is dismissed but he has standing and has adequately alleged claims for violation of the Fourth Amendment for the entry into his home and seizure for violating the terms of electronic monitoring.

I. **Legal Standards**

Plaintiffs in federal court must have Article III standing, which means they must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Flynn v. FCA US LLC*, 39 F.4th 946, 952 (7th Cir. 2022) (citing *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)). Plaintiffs bear the burden of establishing their standing. *Flynn*, 39 F.4th at 952. In response to a factual challenge to standing, a "court may look beyond the pleadings and view any evidence submitted to determine if subject matter jurisdiction exists." *Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th Cir. 2015). When reviewing a facial challenge to the plaintiffs' standing, however, "the court must accept all well-pleaded factual allegations as true and draw all reasonable inferences in favor of the plaintiffs." *Id*.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Hess v. Garcia*, 72 F.4th 753, 758 (7th Cir. 2023) (internal citation omitted). To determine whether a complaint states a claim, a court must identify the well-pleaded factual allegations and ask whether those allegations "plausibly give rise to an entitlement of relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Ordinarily a court may only consider the allegations of the complaint when ruling on a 12(b)(6) motion to dismiss. *Fin. Fiduciaries, LLC v. Gannett Co., Inc.*, 46 F.4th 654, 663 (7th Cir. 2022). However, the "court may consider documents that are (1) referenced in the plaintiff's complaint, (2) concededly authentic, and (3) central to the plaintiff's claim." *Id*.

## II. Background

Vondell Wilbourn was charged with felony offenses in 2019, but he had posted bond and was on electronic monitoring while his case was pending in Cook County Circuit Court. [19] ¶¶ 6–8.[1] Wilbourn lived with his wife and children and was authorized to transport his children to and from school. [19] ¶¶ 9–10.

On Friday, March 3, 2023, officers from the Sheriff's Electronic Monitoring unit came to Wilbourn's house, arrested him, and brought him to Cook County jail. [19] ¶ 19. When Wilbourn appeared in court on Tuesday, March 7, 2023, prosecutors proffered that he had "deviated in his essential movement" on four occasions between January 31, 2023, and February 23, 2023. [19] ¶¶ 20–21. The judge granted the prosecutors leave to file a petition for violation of bail bond and ordered Wilbourn held without bail. [19] ¶ 22. Nineteen days later, on March 21, 2023, Wilbourn's original bond was reinstated by the Illinois Appellate Court. [19] ¶ 24. Wilbourn eventually pled guilty to some charges and was sentenced to two years in the Illinois Department of Corrections on May 9, 2023, with credit for 1,371 days served in custody (which included time spent on electronic monitoring and in jail). [19] ¶ 26; [20-4].

---

[1] Bracketed numbers refer to entries on the district court docket. Page numbers are taken from the CM/ECF header placed at the top of filings. Facts are taken from Wilbourn's amended complaint. [19].

3

**III.    Analysis**

    **A.    Standing**

Defendants argue that Wilbourn lacks standing because his injury, 19 days in custody, from March 3 to 21, 2023, has already been remedied by its application to his sentence for the underlying criminal charge. "[A] section 1983 plaintiff may not receive damages for time spent in custody, if that time was credited to a valid and lawful sentence." *Ewell v. Toney*, 853 F.3d 911, 917 (7th Cir. 2017). Wilbourn was sentenced to two years for being a felon in possession of a firearm and his judgment reflects that the 1,371 days he served in custody are to be credited to his sentence. [20-4].

Wilbourn's sentence was for 2 years, or 730 days, a shorter period than the 1,371 days credited to his sentence.[2] Wilbourn argues that since he cannot "bank" extra time toward some future sentence, and the 19 days he spent in jail came after he already spent more time in custody than necessary to satisfy his two-year sentence, his time in the jail was not credited toward his sentence. [22] at 8. But the court order says otherwise—all 1,371 days, including the 19 days spent in jail, were credited toward his sentence. [20-4]; *see also* 730 ILCS 5/5-4.5-100(b) ("the offender shall be given credit … for the number of days spent in custody as a result of the offense for which the sentence was imposed"). That more time was credited than necessary to discharge the sentence does not mean the time was not credited at all.

---

[2] I assume that Wilbourn had to serve the two-year sentence because the application of day-for-day credit requires the Illinois Department of Corrections to calculate a defendant's term. *See* 20 Ill. Adm. Code § 107.110(c); § 107.150(a), (c).

4

Under *Ewell*, custodial time that was part of a lawful sentence is not redressable by damages. Although *Ewell* described that as a standing problem, it also lines up with *Heck v. Humphrey*, 512 U.S. 477, 487 (1994), which holds that § 1983 may not be used to challenge the lawfulness of confinement if a judgment in plaintiff's favor would imply the invalidity of a criminal judgment. Wilbourn's claim implies that he should not have been in custody from March 3 to 21, 2023, but a valid criminal judgment says that time was part of his conviction and sentence. A section 1983 plaintiff cannot recover damages for that time.

But even if *Ewell* (or *Heck*) wipes out Wilbourn's claim for damages, he has standing to pursue his claims. The complaint includes allegations that the Sheriff's officers handcuffed Wilbourn in front of his minor children. [19] ¶ 19. That is enough to suggest an emotional injury independent of the time credited to his criminal sentence, enough to posit a concrete injury redressable by nominal damages. Defendants' motion to dismiss for lack of standing is denied.

### B. Constitutional Violation

Wilbourn seeks to hold the Cook County Sheriff, a local government body, liable for damages arising out of a constitutional injury. A *Monell* claim requires "(1) a municipal action, which can be an express policy, a widespread custom, or an act by an individual with policy-making authority, (2) culpability, meaning, at a minimum, deliberate conduct; and (3) causation, which means the municipal action was the 'moving force' behind the constitutional injury." *Ruiz-Cortez v. City of Chicago*, 931 F.3d 592, 598 (7th Cir. 2019). The first inquiry in any § 1983 suit is to

isolate the precise constitutional violation with which the defendant is charged. *Baker v. McCollan*, 443 U.S. 137, 140 (1979). Wilbourn alleges three constitutional violations—violation of the due process clause of the Fourteenth Amendment, violation of the Fourth Amendment for unauthorized entry to a home, and violation of the Fourth Amendment for unreasonable seizure. [19] ¶¶ 15–17.

1. *Fourteenth Amendment*

Wilbourn alleges that the Sheriff's policy to arrest pre-trial detainees for violations of electronic monitoring without first obtaining an order from a court violates the due process clause of the Fourteenth Amendment. [22] at 9–10. He argues that a hearing was required *before* the Sheriff effectively revoked his release on electronic monitoring by arresting him and holding him at the Cook County jail. *Id*. But pre-trial detention, including the detention of an individual granted bail, is governed by the Fourth Amendment. *Manuel v. City of Joliet*, 580 U.S. 357, 366–67 (2017); *Williams v. Dart*, 967 F.3d 625, 632 (7th Cir. 2020) ("If plaintiffs' custody was wrongful, it was the Fourth Amendment that made it so, whether for want of probable cause, as in *Manuel*, or for want of a neutral decision-maker, as in *Gerstein*[.]"); *see also Arquero v. Dart*, 587 F.Supp.3d 721, 726–27 (N.D. Ill. 2022) (Fourth Amendment governs claims of pre-trial detainee out on electronic monitoring who was arrested due to malfunctioning equipment); *Murdock v. City of Chicago*, No. 20 C 1440, 2022 WL 17357769, at *4 (N.D. Ill. Dec. 1, 2022) (policy prohibiting persons from posting bond at police station and requiring them to wait until they can post bond in court analyzed under the Fourth Amendment). Wilbourn brings two Fourth Amendment

6

claims and those are the appropriate vehicles for his complaint about his arrest and detention. *See Manuel*, 580 U.S. at 367 ("If the complaint is that a form of legal process resulted in pretrial detention unsupported by probable cause, the right allegedly infringed lies in the Fourth Amendment.").

Wilbourn doesn't explain why the Fourteenth Amendment's due process clause grants him different or additional protection than the Fourth Amendment's requirement of a "neutral decision-maker between unchecked official discretion and invasions of private liberty by search or seizure." *Williams*, 967 F.3d at 633. When the Fourth Amendment provides constitutional protection against intrusive state action, it provides the guide for analyzing the plaintiff's claims instead of "the more generalized notion of substantive due process." *Hess v. Garcia*, 72 F.4th 753, 764 (7th Cir. 2023) (citing *Graham v. Connor*, 490 U.S. 386, 395 (1989)). The cases Wilbourn cites to support his invocation of the Fourteenth Amendment involve people who were on parole after serving a custodial sentence, *Morrissey v. Brewer*, 408 U.S. 471 (1972) and *Faheem-El v. Klincar*, 841 F.2d 712 (7th Cir. 1988), or serving probation as their criminal sentence, *Gagnon v. Scarpelli*, 411 U.S. 778 (1973); their guilt had been adjudicated and different constitutional rights were at stake than for a pre-trial detainee. Wilbourn's Fourteenth Amendment claim does not advance a different set of rights than those contained in his Fourth Amendment claim—his right to remain free from seizure absent a judicial finding that he violated the terms of electronic monitoring or probable cause that he committed another crime; his Fourteenth Amendment claim is dismissed.

2. *Fourth Amendment*

"To state a claim under the Fourth Amendment, a plaintiff must show that a search or seizure occurred and that the search or seizure was unreasonable." *Hess*, 72 F.4th at 761. "The standard for pretrial detention is probable cause, that is, official knowledge of facts and circumstances sufficient to warrant a prudent person in believing the detainee has committed a criminal offense. The procedure for pretrial detention, for imposing any extended restraint of liberty before trial, is a decision by a neutral and detached magistrate rather than a law enforcement officer." *Williams*, 967 F.3d at 632 (cleaned up).

Wilbourn alleges that the Sheriff's policy allows law enforcement to enter a house to make an arrest without a warrant and to seize an individual without probable cause that they committed a crime, both of which are unreasonable under the Fourth Amendment.

a. Entry

"A court assesses the reasonableness of a search by looking at the totality of circumstances, including by assessing on one hand, the degree to which it intrudes upon an individual's privacy, and on the other hand, the degree to which it is needed for the promotion of legitimate governmental interests." *United States v. Beechler*, 68 F.4th 358, 365 (7th Cir. 2023) (internal quotation omitted). "It is a basic principle of Fourth Amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable." *Payton v. New York*, 445 U.S. 573, 586 (1980); *see also Sparing v. Vill. of Olympia Fields*, 266 F.3d 684, 688–89 (7th Cir. 2001). A law

enforcement officer may enter a home if there are exigent circumstances, if she has a warrant to enter, or if she has consent to enter. *Payton*, 445 U.S. at 590; *Georgia v. Randolph*, 547 U.S. 103, 109 (2006). Defendants do not assert that exigent circumstances authorized them to enter Wilbourn's house or that they had a warrant to arrest him. Instead, they argue that Wilbourn gave his consent for sheriff's deputies to enter the house because he signed two electronic monitoring participant agreements, both of which state: "I/You agree to admit representatives of the Program into my Approved Residence twenty-four hours a day to ensure compliance with the conditions of the program." [23-2] at 1.[3]

Defendants attached Wilbourn's electronic monitoring participant agreement to their reply brief and argue that I can consider it because it is "integral to the complaint." *See* [23] at 11. Wilbourn's complaint states that he was released from Cook County Jail "subject to the rules of the electronic monitoring," [19] ¶ 8, so the document containing such rules is mentioned in the complaint. *See Fin. Fiduciaries*, 46 F.4th at 663. But I do not consider the participant agreement because plaintiff did not have a chance to raise any objections to its authenticity. *See id*. An Illinois statute authorizes electronic monitoring, and I can consider the statute at the motion to dismiss stage. The statute provides that the program's rules "may include" the requirement that "[t]he participant shall admit any person or agent designated by

---

[3] The 2021 agreement has an additional term—"I understand that my person, my property, and/or my personal space within the Approved Residence may be subject to warrantless search by representatives of the Program in order to ensure compliance with the terms of the Program, any applicable court orders and on-going officer safety." *Id*.

9

the supervising authority into his or her residence at any time for purposes of verifying the participant's compliance with the conditions of his or her detention." 730 ILCS 5/5-8A-4(B).

For entries into a home, consent is an exception to the Fourth Amendment's warrant or exigent circumstances requirement. *United States v. Jones*, 22 F.4th 667, 675 (7th Cir. 2022). Whether consent to a search is voluntary is a question of fact to be determined from the totality of all the circumstances. *Id*. at 675–76. Even when an individual has consented to entry, the search must still be within the scope of the consent. *United States v. Dichiarinte*, 445 F.2d 126, 129–30 (7th Cir. 1971). The scope of consent is a question of fact to be determined from the totality of all the circumstances and governed by an objective standard. *United States v. Breit*, 429 F.3d 725, 729–30 (7th Cir. 2005) (citing *United States v. Torres*, 32 F.3d 225, 230–31 (7th Cir. 1994)). Under the statute, Wilbourn may have consented to entries to his house "at any time for purposes of verifying [his] compliance with the condition of his … detention." 730 ILCS 5/5-8A-4(B). But the specifics of any consent given by Wilbourn are outside the record for now. Whether the Sheriff's officers' entry for the purpose of arresting Wilbourn falls within the scope of the consent is also a question of fact inappropriate for resolution at this time. Taking the allegations of the complaint as true, the officers entered Wilbourn's house on March 3, 2023, because they had already determined he had taken a different route home from taking his children to school and sought to detain him. [19] ¶¶ 11, 17, 19. *People v. Garcia*, cited by defendant, relied on a record developed at an evidentiary hearing to resolve the scope

10

of the consent at issue. *Id.*, 2021 IL App (1st) 190026, ¶¶ 4–20, 40–42. Although additional facts and briefing might belie Wilbourn's theory, at this stage of the case, his allegations suffice to claim a nonconsensual entry.

        b.      Seizure

Probable cause is "an absolute defense to any § 1983 claim … for false arrest or false imprisonment." *Abbott v. Sangamon County, Ill.*, 705 F.3d 706, 713–14 (7th Cir. 2013). "Probable cause to justify an arrest exists if the totality of the facts and circumstances known to the officer at the time of the arrest would warrant a reasonable, prudent person in believing that the arrestee had committed, was committing, or was about to commit a crime." *Id.* at 714; *accord Hart v. Mannina*, 798 F.3d 578, 587 (7th Cir. 2015). Defendants argue that the Sheriff had a bailor's right to seize Wilbourn for violating the terms of his electronic monitoring, that Wilbourn has failed to allege the lack of probable cause, a necessary element of his claim, and that probable cause existed to arrest Wilbourn for escape.

Defendants rely on *Williams v. Dart* for the proposition that "it is reasonable for officers to take a person back into custody for violating the conditions of electronic monitoring and to bring him before the court on the next court day." [23] at 12. But although *Williams* assumed the Sheriff was free to pull the string of a someone released on bail, the court took care to differentiate state or common law principles from Fourth Amendment doctrine. *Williams*, 967 F.3d at 636 ("The Fourth Amendment is not a vehicle for enforcing the terms of state law."). Here, if entering the home was outside the scope of consent, the seizure could be unreasonable under

11

the Fourth Amendment's requirement of a neutral decision-maker as a check against official discretion. *See Williams*, 967 F.3d at 633.

An arrest supported by probable cause to believe the person committed an offense is reasonable, even if the offense itself is not an "arrestable" or "jailable" offense. *See Thomas v. City of Peoria*, 580 F.3d 633, 637–38 (7th Cir. 2009). Defendants contend that they had probable cause that Wilbourn committed the offense of escape. [23] at 12; [20] at 9. But the crime of escape requires that a participant *knowingly* violate the terms of an electronic monitoring program. *See* 730 ILCS 5/5-8A-4.1(a)–(b) (2021) (the person must also "remain in violation for at least forty eight hours).[4] "A law enforcement officer must have 'some evidence' on an intent element to demonstrate probable cause." *Dollard v. Whisenand*, 946 F.3d 342, 355 (7th Cir. 2019).

Wilbourn has the burden of pleading and proving that the Sheriff's officers lacked probable cause for his arrest. *Braun v. Village of Palatine*, 56 F.4th 542, 548 (7th Cir. 2022). Wilbourn alleges that on Friday, February 25, 2023, employees of the Sheriff determined that on four occasions plaintiff did not return home by the route he had followed while driving his children to school; that plaintiff did not violate Illinois statute when he did so; that he did not violate any of the Rules and Regulations of the electronic monitoring when he did so; that on March 3, 2023, officers traveled to plaintiff's home and arrested him; and that the Sheriff's policy of

---

[4] The parties agree, and I concur, that the operative version of the statute is the one that pre-dates the Pretrial Fairness Act, and which was last amended in July 2021. [20] at 4; [22] at 13.

arresting bailees when the Sheriff's office determines they have violated a condition of electronic monitoring is an unreasonable seizure. [19] ¶¶ 11–14, 16, 19. These allegations lead to a reasonable inference that at the time of Wilbourn's arrest, the Sheriff's employees only knew that he had not returned home by the same route four times and the employees had no other indication that Wilbourn was knowingly violating the terms of his electronic monitoring program. That is enough to allege the lack probable cause to believe that Wilbourn had committed escape.

Wilbourn attached to his response brief the transcript of the hearings at which the state-court judge revoked bond and the court orders that gave him permission to drop off and pick up his children from school. [22-1], [22-2], [22-4] [22-5]. Defendants argue that the information in these documents plead Wilbourn out of court because they demonstrate that the Sheriff's officers had probable cause that he knowingly violated the terms of his electronic monitoring. [23] at 13–14. But the portions of the transcript that Defendants point to are the prosecutor's argument about inferences to be drawn from Wilbourn's history and the judge's comments about what she had previously told Wilbourn. Whether the seizing officers knew this information is not apparent from the transcripts. *See Abbott*, 705 F.3d at 714. The transcript and court orders reveal the addresses of Wilbourn's host site, his children's schools, and the location of the deviations. [22-2] at 7:16–10:1; [22-4] at 1. Nothing in the record reflects that Wilbourn made a stop in violation of the EM rules. Without more, the addresses by themselves do not establish probable cause that Wilbourn knowingly violated the terms of electronic monitoring. The current record does not establish that

13

a route deviation amounts to probable cause to believe Wilbourn committed a knowing escape. Taking Wilbourn's allegations as true, he has adequately pled that the Sheriff violated the Fourth Amendment by seizing him on March 3, 2023.

## IV. Conclusion

Defendants' motion to dismiss, [20], is granted in part, denied in part. Plaintiff's Fourteenth Amendment claim is dismissed, but his claims under the Fourth Amendment remain.

ENTER:

                                            Manish S. Shah
                                            United States District Judge

Date: March 1, 2024