UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| VONDELL WILBOURN, <br><br> Plaintiff, <br><br> v. <br><br> SHERIFF OF COOK COUNTY and COOK COUNTY, ILLINOIS, <br><br> Defendants. | No. 23 CV 1782 <br><br> Judge Manish S. Shah |

**MEMORANDUM OPINION AND ORDER**

Vondell Wilbourn was on pre-trial release when he was returned to Cook County Jail for violating the terms of his electronic monitoring program. Cook County Sheriff's officers took Wilbourn without a warrant or court order revoking his release. Wilbourn moves to certify two classes—the first consisting of released defendants who were returned to jail solely for violating the electronic monitoring program, and the second consisting of those returned to jail for violating the electronic monitoring program by Cook County Sheriff employees who entered their home without a warrant. For the reasons discussed below, the motion is denied.

**I.      Legal Standards**

The party seeking class certification under Federal Rule of Civil Procedure 23 bears the burden of demonstrating that certification is proper by a preponderance of the evidence. *Jacks v. DirectSat USA, LLC*, 118 F.4th 888, 895 (7th Cir. 2024). I must resolve any disputes that are material to class certification, even if such analysis

overlaps with the merits. *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 465–66 (2013). "Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Id.* at 466. Class certification proceedings are not "a dress rehearsal for a trial on the merits." *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012).

## II. Background

Vondell Wilbourn was a participant in Cook County's pretrial release electronic monitoring program while he had a case pending in Cook County Circuit Court. [57-6] at 5 (173:12–15); [19] ¶¶ 6–8.[1] Wilbourn lived with his wife and children and was authorized to transport his children to and from school. [19] ¶¶ 9–10.

On March 3, 2023, officers from the Sheriff's electronic monitoring unit came to Wilbourn's house, arrested him, and took him to Cook County jail. [57-6] at 5–6 (173:16–174:1); [19] ¶ 19. When Wilbourn appeared in court on March 7, prosecutors proffered that he had "deviated in his essential movement" on four occasions between January 31 and February 23, 2023. [19] ¶¶ 20–21. The judge granted the prosecutors leave to file a petition for violation of bail bond and ordered Wilbourn held without bail. [57-6] at 97 (265:4–14); [19] ¶ 22. Nineteen days later, Wilbourn's original bond was reinstated by the Illinois Appellate Court. [57-6] at 96–97 (264:20–265:3); [19] ¶ 24. Wilbourn eventually pled guilty to some charges and was sentenced to two years

---

[1] Bracketed numbers refer to entries on the district court docket. Page numbers are taken from the CM/ECF header placed at the top of filings. In the case of citations to depositions, I also use the deposition transcript's original page numbers.

2

in the Illinois Department of Corrections, with credit for 1,371 days served in custody (which included time spent on electronic monitoring and in jail). [19] ¶ 26; [20-4].

## III. Analysis

Under Rule 23(a), a plaintiff must satisfy four prerequisites to certify a class: (1) numerosity; (2) commonality; (3) typicality; and (4) adequate representation. Fed. R. Civ. P. 23(a). After meeting this threshold, a plaintiff must "satisfy through evidentiary proof" at least one of the Rule 23(b) requirements. *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013). Wilbourn seeks to certify a class under Rule 23(b)(3), which requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3); [57] at 1. In addition to Rule 23's explicit requirements, courts "have long recognized an implicit requirement … that a class must be defined clearly and that membership be defined by objective criteria." *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 657 (7th Cir. 2015).

### A. Class Definition and Numerosity

A class is "defined clearly" when it is precise, defined by objective criteria, and not defined by success on the merits. *Id.*

Wilbourn proposes two classes (which he labels "sub-classes" although he does not propose an overarching class):

3

The "Fourth Amendment Arrest Sub-Class"

(1) Any person released on electronic monitoring supervised by the Sheriff of Cook County who was returned, without a court order, to the Cook County Jail by employees of the Sheriff of Cook County from March 22, 2021 to September 16, 2023, based solely on an alleged violation of a condition of the Sheriff's electronic monitoring program that does not independently constitute a violation of Illinois law.

The "Fourth Amendment Home Entry Sub-Class"

(2) Any person released on electronic monitoring supervised by the Sheriff of Cook County who was returned, without a court order, to the Cook County Jail by employees of the Sheriff of Cook County from March 22, 2021 to September 16, 2023, because the Office of the Sheriff determined that the person had violated a condition of the Sheriff's electronic monitoring program and who was taken into custody after agents of the Cook County Sheriff entered the person's home without a warrant. This proposed sub-class does not include any person residing in a half-way house or other group home.

Whether someone was returned to jail for an alleged violation of the electronic monitoring program that was not an independent crime under Illinois law is defined by objective criteria. Whether an electronic monitoring violation itself is a violation of law is a legal question, and whether there was probable cause for the officers to arrest the electronic monitoring participant for a crime is also an objective inquiry. *Pryor v. Corrigan*, 124 F.4th 475, 486 (7th Cir. 2024) ("Probable cause is an objective standard."). Similarly, whether someone was taken into custody after agents of the Cook County Sheriff entered the person's home without a warrant is also based on objective facts. The classes are readily ascertainable.

The proposed class must also be too numerous for practicable joinder. Fed. R. Civ. P. 23(a)(1). A "class can be certified without determination of its size, so long as it's reasonable to believe it large enough to make joinder impracticable and thus

4

justify a class action suit." *Orr v. Shicker*, 953 F.3d 490, 497–98 (7th Cir. 2020). The proposed classes here have over 50 individuals.[2] [57] at 5–6; [57-2]; [69] at 13. Numerosity is satisfied. *See Orr*, 953 F.3d at 498.

### B. Typicality and Adequacy

"[T]he claims or defenses of the representative parties [must be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). A representative's claims must "arise[] from the same event or practice or course of conduct that gives rise to the claims of other class members and … [be] based on the same legal theory." *Muro v. Target Corp.*, 580 F.3d 485, 492 (7th Cir. 2009). "The presence of even an arguable defense peculiar to the named plaintiff or a small subset of the plaintiff class may destroy the required typicality of the class." *CE Design Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721, 726 (7th Cir. 2011).

Both the representative plaintiff and their class counsel must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This requirement "serves to uncover conflicts of interest between named parties and the class," as well as divergent interests among class members. *Howard v. Cook Cnty. Sheriff's Off.*, 989 F.3d 587, 609–10 (7th Cir. 2021). Adequacy of the class representative often merges with typicality. *See Santiago v. City of Chicago*, 19 F.4th 1010, 1018 (7th Cir. 2021) ("To be an adequate representative, a named plaintiff must

---

[2] Wilbourn represents that even with the revised class definition proposed in his reply brief, the number is above the 40-person general guideline. *See Orr*, 953 F.3d at 498 ("While there is no magic number that applies to every case, a forty-member class is often regarded as sufficient to meet the numerosity requirement.").

5

be a member of the putative class and have the same interest and injury as other members."); *CE Design*, 637 F.3d at 724; *Robinson v. Sheriff of Cook Cnty.*, 167 F.3d 1155, 1157 (1999) (if a plaintiff's "claim is atypical, he is not likely to be an adequate representative").

While defendants do not contest class counsel's adequacy, I must still ensure that Rule 23(a)'s requirements are met to "protect[ ] absent class members whose rights may be affected by the class certification." *Davis v. Hutchins*, 321 F.3d 641, 649 (7th Cir. 2003). Wilbourn's counsel are experienced class action litigators with experience in § 1983 cases, and particularly § 1983 class actions. *See* [57] at 12–14. They have committed resources to bringing and litigating the case through a motion to dismiss and discovery. [1], [22], [32]. Proposed class counsel is adequate to represent the putative class. *See* Fed. R. Civ. P. 23(g)(1)(A)–(B).

Cook County says that Wilbourn's claims are atypical and he is not an adequate representative because there are too many individual questions and his claim does not share the same "essential characteristics as the claims of the class at large." *McFields v. Dart*, 982 F.3d 511, 518 (7th Cir. 2020). But narrowing the class to the three issues proposed (see below), Wilbourn's claims are typical of the class. The evidence Wilbourn has submitted shows that he was a participant in Cook County's electronic monitoring program and was returned to Cook County Jail solely for an electronic monitoring violation that was not a violation of Illinois law. To arrest him, sheriff's officers entered his home without a warrant. Wilbourn's individual case presents a claim over an arrest solely for an electronic monitoring violation and the

scope of consent in the electronic monitoring agreement. His claims are typical of the proposed classes.

Cook County also argues that Wilbourn is not an adequate representative, and his claims are atypical because he is subject to a unique defense. "Where it is predictable that a major focus of the litigation will be on an arguable defense unique to the named plaintiff ... then the named plaintiff is not a proper class representative." *Westmoreland v. Hughes*, 144 F.4th 952, 956 (7th Cir. 2025) (quoting *Koos v. First Nat. Bank of Peoria*, 496 F.2d 1162, 1164 (7th Cir. 1974)). Cook County says that Wilbourn is subject to a unique defense: that he received credit for the time he spent in custody, so he is only entitled to nominal damages for emotional injury. But the amount of damages a plaintiff is entitled to does not make him inadequate. Adequacy is concerned with whether a named plaintiff will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(4). Having to calculate individualized damages does not preclude class certification. *Svoboda v. Amazon.com Inc.*, __ F.4th __, 2025 WL 3654053, at *7 (7th Cir. Dec. 17, 2025) ("Even if individual questions about the remaining defenses and damages remain, they do not defeat class certification, particularly where other common questions predominate."); *Arandell Corp. v. Xcel Energy Inc.*, 149 F.4th 883, 887 (7th Cir. 2025) ("It is also well established that individual questions of damages should not defeat class certification."). Wilbourn alleges the same injury—a Fourth Amendment violation—that he alleges the rest of the class also experienced. He has pursued this class action

7

even if he is only entitled to nominal damages. He has shown that he will fairly and adequately protect the interests of the classes.

### C. Commonality, Predominance, and Superiority

Although the classes are ascertainable and satisfy numerosity and typicality, and plaintiff and plaintiff's counsel satisfy adequacy, there are too many individual questions to certify the classes.

Class certification is only appropriate if "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "[E]ven a single common question will do" to fulfill Rule 23's commonality requirement. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011) (quotations and citation omitted). "The key to commonality is 'not the raising of common questions … but, rather, the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation.'" *Orr*, 953 F.3d at 498–99 (quoting *Wal-Mart*, 564 U.S. at 350) (emphasis in original). "Dissimilarities within the proposed class are what have the potential to impede the generation of common answers." *Id.* at 499.

For certification under Rule 23(b)(3), common questions must predominate over individual questions that may arise in the case. Fed. R. Civ. P. 23(b)(3). The predominance inquiry focuses on whether a proposed class is "sufficiently cohesive to warrant adjudication by representation." *Gorss Motels, Inc. v. Brigadoon Fitness, Inc.*, 29 F.4th 839, 843 (7th Cir. 2022) (quoting *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016)). Scrutiny should be given to "the relation between common and individual questions in a case." *Tyson Foods*, 577 U.S. at 453. In other words,

evaluating predominance "requires more than a tally of common questions; the district court must consider their relative importance." *Eddlemon v. Bradley Univ.*, 65 F.4th 335, 339 (7th Cir. 2023). Relative importance of questions also bears on superiority; under Rule 23(b)(3), a class action must be superior to other available methods for fairly and efficiently adjudicating the controversy. This is where Wilbourn's classes run into trouble. As written, the Fourth Amendment arrest class has a common issue: whether the Fourth Amendment allows for the arrest for an electronic monitoring violation that is not an independent violation of Illinois law. If the answer is yes, that would resolve liability "in one fell swoop" in defendants' favor. *See Scott v. Dart*, 99 F.4th 1076, 1089 (7th Cir. 2024). But if the answer is no, that won't necessarily address whether the Fourth Amendment was violated in each specific case. Even if a seizure for violating electronic monitoring is not automatically reasonable under the Fourth Amendment, in certain cases, the officers may have had knowledge of facts that would give rise to probable cause to support a seizure.

For example, in one incident, two officers were sent to investigate an electronic monitoring program participant suspected of violating the program by engaging in unauthorized movement. [58] at 15. The officers "made contact" with the participant, who admitted to leaving his host site to buy medicine for his son. [58] at 15. After failing to produce a receipt for the Uber ride he claimed he took, the participant admitted to officers that he drove his neighbor's car to go to the store, knowing he had a suspended license. [58] at 15. He was then handcuffed and put into the officers' car. [58] at 15.

9

Although the incident report ultimately says he was "reincarcerated for [electronic monitoring] program violation (unauthorized leaves)," [58] at 16, officers likely had probable cause that the participant drove on a suspended license—an Illinois Class A misdemeanor. 625 ILCS 5/6-303(a). *See Farnik v. City of Chicago*, 1 F.4th 535, 545 (7th Cir. 2021) (probable cause is an absolute bar to Fourth Amendment claim). Plaintiff says this person would not be included in the arrest class as proposed in the reply brief (because the class is intended to exclude anyone for whom probable cause to believe they committed a crime existed), even though at first blush, it appears that he would, because he was reincarcerated solely for an electronic monitoring violation that was not a criminal offense.[3] Sorting out whether no probable cause existed for a class member requires developing a factual record about what the seizing officers knew and when they knew it for each individual. Determining whether a Fourth Amendment violation occurred—the "central issue for all class members' claims"—for each person in the class turns on individualized questions. *Jamie S. v. Milwaukee Pub. Schs.*, 668 F.2d 481, 497 (7th Cir. 2012). The common answers to the question presented by the class would not "drive the resolution of the litigation," because for each class member, whether their Fourth Amendment rights were violated depends on the facts and circumstances of their seizure. *Orr*, 953 F.3d at 498–99.

---

[3] At oral argument, plaintiff said that the officers did not have probable cause until the program participant was already in custody. But the incident summary does not clearly indicate that—whether the participant was seized when the officers "made contact," and what kind of seizure occurred, requires factual development and precludes adjudication of this potential class member's claim on a classwide basis.

10

Cook County also argues that each person on electronic monitoring has "consented" to being reincarcerated for an electronic monitoring violation—I take this to be an argument that each person on electronic monitoring has waived their Fourth Amendment rights against unreasonable searches and seizures.[4] Whether someone has validly waived their Fourth Amendment right against unreasonable seizures is a question of fact to be determined from the totality of the circumstances. *United States v. Jones*, 22 F.4th 667, 675 (7th Cir. 2022); [26] at 10. This is another way that individual questions pervade the class. Whether any class member knowingly and intelligently gave up the right to be protected from seizures without probable cause in exchange for release from Cook County Jail and the benefit of house arrest is an individualized question that would drive resolution of the Fourth Amendment seizure claim.

Individual questions also predominate over common questions for the Fourth Amendment home-entry class. The main problem is consent to enter. Cook County has noted that in at least three cases, evidence shows that the host of the person on electronic monitoring or the person themselves consented to officers entering the home. *See* [65] at 9; [65-3] at 18 (incident number EM-2021-22587), 30 (incident number EM-2022-20646), 33 (incident number EM-2022-24299). Even if every person on electronic monitoring did not waive their Fourth Amendment right against entry into their home without a warrant by participating in the program, if they or their

---

[4] The parties have not fully articulated the difference between consent and waiver. I use waiver to describe the electronic monitoring program's blanket consent to entry and reincarceration to distinguish it from any consent given at the time of entry.

11

host consented to the officers entering the home, there would be no Fourth Amendment violation. Consent is a fact-dependent question. *See United States v. Han*, 105 F.4th 986, 991 (7th Cir. 2024).

Finally, as with the waiver of unreasonable seizures, whether somebody voluntarily waived their Fourth Amendment right to refuse consent to law enforcement entering their home by signing the electronic monitoring agreement depends on the person's state of mind. *See id.* This would require an individual inquiry into what every person understood when they signed the agreement.

In *Scott*, 99 F.4th at 1092, a common question of jail policy satisfied predominance and superiority (especially for a large class) because its resolution would not be enhanced by repeated proceedings. Although Wilbourn similarly raises a policy—warrantless seizures and home entries for electronic monitoring violations that are not independent criminal violations—resolution of the claims of this markedly smaller class is so dependent on individual questions that a class action is not superior to 50 lawsuits. Resolution of the Fourth Amendment test, while objective like a due-process medical care claim, still turns on each individual seizure and entry. Without digging into each individual class member's case, the policy question under the Fourth Amendment is largely academic.

Because individual questions predominate over the common questions in the case and a class action is not superior to individual lawsuits, certification under Rule 23(b)(3) is inappropriate.

12

### D. Issue Classes

Even if the certification of the classes for adjudication is not appropriate, certification of issue classes may be. *See Beaton v. SpeedyPC Software*, 907 F.3d 1018, 1023 (7th Cir. 2018) ("District courts may amend class definitions either on motion or on their own initiative."). Rule 23(c)(4) allows for an action to be "brought or maintained as a class action with respect to particular issues." Fed. R. Civ. P. 23(c)(4). A district court may certify an issue under Rule 23(c)(4) "so long as the resolution of that issue is driven predominantly by common questions" and "certifying the proposed issues would be the most practical and efficient way to resolve the litigation." *Jacks*, 118 F.4th at 898. The superiority requirement "functions as a backstop against inefficient use of Rule 23(c)(4) because it ensures that courts will not rely on issue certification where there exist only minor or insignificant common questions." *Id.* (internal quotation marks and citations omitted).

Wilbourn has put forth "three disputed questions arising under the Fourth Amendment," [57] at 6: (1) whether the Fourth Amendment allows an arrest for electronic monitoring program violations that are themselves not a violation of state or federal law; (2) whether people on electronic monitoring have consented to a warrantless entry of their dwelling for the purpose of returning the person to jail; and (3) whether, if consent is given, sheriff's officers exceed the scope of the consent when they enter a dwelling to make a warrantless arrest for an electronic monitoring program violation. At oral argument on the motion for class certification, plaintiff

asked me to consider issue certification if I were inclined not to certify the classes for adjudication.

### 1. *Commonality and Predominance*

A "party seeking certification of an issue class under Rule 23(c)(4) must show that common questions predominate in the resolution of a specific issue or issues that are the subject of the certification motion and not as to the cause of action, taken as a whole." *Jacks*, 118 F.4th at 897. Whether the Fourth Amendment allows for an arrest for electronic monitoring program violations that are not independently state or federal crimes is a discrete legal question. No individual questions would predominate in determining that issue.

Similarly, whether the electronic monitoring agreement allows for warrantless entry for the purpose of returning a participant to jail is a question of interpretation of the agreement. This does not turn on individual questions, but instead, a common question about the agreement's language. To the extent that Wilbourn's proposed question asks whether a program participant has consented to warrantless entry, that analysis includes individual questions that would predominate over the common ones. *See Han*, 105 F.4th at 991. The issue class, instead, would address the scope of consent as written in the electronic monitoring program agreement.

Finally, whether an officer exceeds the scope of consent within the electronic monitoring program agreement if they enter a home to arrest without a warrant is a legal question relying on common questions—what is the scope of consent in the electronic monitoring program agreement? This common question predominates over any individual questions within the issue.

14

### 2. *Superiority*

Class treatment must also be "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3); *Jacks*, 118 F.4th at 898. Class actions are generally superior when collective treatment "would achieve economies of time, effort, and expense, and promote … uniformity of decision as to persons similarly situated." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615 (1997). Issue classes are superior if certifying the issue would "materially advance" a plaintiff's claims. *Jacks*, 118 F.4th at 899.

Certifying an issue class would not achieve economies of time, effort, and expense, because of the individual questions still present even once the common issues have been resolved. Answering the three disputed questions would not materially advance the litigation, because for each putative class member, whether *their* Fourth Amendment rights were violated depends on questions individual to them: whether there was any probable cause for any offense when the participant was seized, what the officers said when seeking consent to enter a home, whether the host or participant consented to entry, and whether the participant voluntarily waived their Fourth Amendment rights entirely when signing the participant agreement. Like in *Jacks*, this is "not a case where liability and damages can be determined by a simple formula or uncomplicated follow-on proceedings." *Id*. Instead, determining liability and damages "would necessitate [dozens] of separate trials to evaluate evidence regarding the nature and scope of" consent and waiver and the circumstances surrounding each seizure. *Id*. The individual questions are substantially more important in resolving each putative class member's claims than

15

the resolution of the three disputed questions, and therefore, issue-class treatment is not superior to individual cases to adjudicate each program participant's alleged Fourth Amendment violation. I decline to certify issue classes.

## IV. Conclusion

Wilbourn's motion to certify a class, [57], is denied.

ENTER:

                                                  Manish S. Shah
                                                  United States District Judge

Date: December 29, 2025